# IN THE UNITED STATED DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| Charlotte Horst, et. al., | ) | |
|---|---|---|
| | ) | **ORDER AND REPORT AND** |
| Plaintiffs, | ) | **RECOMMENDATION** |
| | ) | |
| vs. | ) | |
| | ) | Case No. 1:19-cv-081 |
| Governor Doug Burgum, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

The plaintiff, Charlotte Horst, initiated the above-entitled action pro se with the submission of a motion for leave to proceed in forma pauperis, a thirty-nine page Complaint, three-hundred sixty pages of attachments/supplemental materials, and a motion for a preliminary injunction. Chief Judge Hovland has referred this matter to the Magistrate Judge for preliminary consideration. For the reason set forth below, I shall grant Horst's motion to proceed in forma pauperis but recommend that the Court dismiss this action without prejudice.

## I. BACKGROUND

Horst names the following individuals and entities as defendants in her Complaint: State Child Support Enforcement Attorney Sheila K. Keller, North Dakota Governor Doug Burgum; North Dakota Attorney General Wayne Stenehjem; North Dakota Secretary of State Alvin Jaeger; the Bismarck Police Department and approximately fifty of its officers; the Mandan Police Department and approximately six of its officers; the Burleigh County State's Attorney's office and approximately ten of its personnel; the Morton County State's Attorney's office and approximately five of its personnel; the Morton County Sheriff's Department and its sheriff; the North Dakota Bureau of Criminal Investigation ("BCI") and approximately three of its officers; the City of Bismarck and its commissioner; the City of Mandan and its commissioner; Morton

County and its commissioner; Burleigh County Social Services; Bismarck and Mandan Public Schools; Pioneer Elementary School; Mandan Middle School; North Dakota Supreme Court Justices Gerald Vande Wall, Daniel Crothers, Lisa McEvers, Jerod Tufte, and Jon Jenson; State District Court Judges Cynthia Feland, Gail Hagerty, Bruce Romanick, and Sonna Anderson (deceased); President Donald Trump, U.S. Secretary of State Mike Pompeo; Attorney General William Barr;  and the United States Department of Justice.  Although not entirely clear, she appears to take issue with state district court restraining orders, a divorce decree and amendments to it, a custody decrees and amendments to them, the North Dakota Supreme Court's affirmance of these decrees, her conviction in state court of the offense of   removal of a child from the state in violation of a custody decree, the state court's revocation of her probation, the suspension of her driver's license by the North Dakota Department of Transportation, what she perceives as local law enforcement's failure to investigate her reports of criminal activities by others, and what she asserts is the fabrication of certain evidence and the destruction of other evidence by local law enforcement and/or prosecutors.  In so doing, she asserts, amongst other things, that her rights under the First through Eleventh, Tenth, Eleventh, Thirteenth through Fifteenth, Nineteenth, and Twenty-First Amendments to the United States Constitution have been violated, that local schools and/or the state kidnaped her children, that the Uniform Child Custody Jurisdiction and Enforcement Act is unconstitutional, and that she has been assaulted and battered, maliciously prosecuted, falsely imprisoned, enslaved, trafficked, defamed, subjected to emotional distress, denied her right to privacy, denied equal access to justice, and otherwise denied her rights under Title VII of the Civil Rights Act, the Violence Against Women Act, Title IX of the Education Amendments Act, the Geneva Convention, the "Palermo Protocols," and various state statutes.

## II.     DISCUSSION

### A.     Motion to Proceed In Forma Pauperis

Proceedings *in forma pauperis* are governed by 28 U.S.C. § 1915, which provides that the court may authorize the commencement of a suit without prepayment of fees by a person submitting a financial affidavit evincing an inability to pay.  See 28 U.S.C. § 1915(a)(1).

I find that Horst has met the burden of showing that she is financially unable to pay the filing fee.  Consequently, I shall waive the civil filing.

### B.     1915(e)(2) screening

Notwithstanding any paid filing fee, 28 U.S.C. § 1915(e)(2) provides  "the court shall dismiss the case at any time if the court determines that . . . the action (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  This § 1915(e)(2) screening, and the authority to dismiss claims arising thereunder, includes non-prisoner pro se complaints.  Key v. Does, 217 F. Supp. 3d 1006, 1007 (W.D. Ark. 2016).  With regard to frivolousness under § 1915(e)(2)(i), "the Supreme Court explained that an action is frivolous if 'it lacks an arguable basis either in law or in fact.'"  Aziz v. Burrows, 976 F.2d 1158, 1159 (8th Cir. 1992) (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)).  "An action is malicious if it is undertaken for the purpose of harassing the named defendants and not for the purpose of vindicating a cognizable right."  Williamson v. Corizon, Inc., No. 1:15CV220, 2016 WL 5933982 at *1 (E.D. Mo. October 12, 2016).  A complaint fails to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678-84 (2009) ("Iqbal").

In applying § 1915(e)(2), the court must give the pro se complaint the benefit of a liberal construction. See, e.g., Federal Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008); Solomon v. Petray, 795 F.3d 777, 787 (8th Cir. 2015) ("When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework.") (internal quotation marks omitted). This does not mean, however, that the pro se litigant is excused from satisfying the plausibility standard established in Twombly and further amplified by the Supreme Court in Iqbal. See Story v. Foote, 782 F.3d 968, 969 (8th Cir. 2015).

### 1.    Rule 8 of the Federal Rules of Civil Procedure

As an initial matter, Horst's Complaint does not comply with Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1) (emphasis added). The purpose of this short and plain statement is to provide defendants with "fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 545.

Horst's Complaint contains maze of constitutional, statutory, and common law claims against approximately one-hundred thirteen named and unnamed defendants. The shotgun style of her Complaint does not provide all of the defendants with fair notice of the nature of all of the claims against them as it is virtually impossible to discern which allegations are intended to support which claims, let alone how these allegations relate to each defendant. Many of the allegations, the vast majority of which are nothing more than unsubstantiated legal conclusions, have little to do with the specifics of a given claim, leaving the court and the litigants to ferret through the thirty-

nine pages of pleadings and the accompanying three-hundred sixty pages of supplemental materials and guess which are material to a particular claim. This is not in keeping with the purposes behind Fed. R. Civ. P. 8.

    **2.**    **Frivolity**

Noncompliance with Rule 8 aside, many of Horst's claims strain credulity or are otherwise incomprehensible and are therefore subject to dismissal on the ground that they are frivolous.

A complaint may be deemed frivolous when "it lacks an arguable basis either in law or in fact." Aziz v. Burrows, 976 F.2d 1158, 1159. A claim may also be deemed frivolous if based lacks an arguable basis either in law or in fact, is based on in indisputably meritless legal theory, or when no reasonable person could suppose it to have any merit. See Denton v. Hernandez, 504 U.S. 31, 32 (1989); Neitzke v. Williams, 490 U.S. 319, 327 (1989); Lee v. Clinton, 209 F.3d 1025 (7th Cir. 2000).

All three aspects of frivolity arguably are applicable here. However, the third aspect is the most obvious. Reading the complaint as a whole, it is apparent that Horst is essentially attempting to sue everyone and everything that had any direct or tangential connection to her domestic relations issues litigated in state court. In so doing, she makes assertions that rise to the level of the "irrational" and "wholly incredible." For example, she asserts, amongst other things that:

> 6.    The Bismarck Police Department and approximately 20 officers upon the Plaintiff's Suspension of the Writ of Habeas Corpus and attempted prosecution of criminal statute without any judicial proceeding stated that the Plaintiff was a "political nightmare" because the State of North Dakota has "no laws on emancipation" and that would make sure she never sees a court, judge, or attorney in 2004 and lead criminal investigator was in charge of the investigation of statutory rape that he arranged the forced marriage under contract of slavery until reaching the age of consent with

falsified testimony of signature by the Plaintiff for consent to Social Services records, with testimony he received a signed copy of a contract for the Plaintiff, and because the suspects requested to not be prosecuted.

* * *

16. The North Dakota Legislature has shown signs of premeditively coordinating with the North Dakota Supreme Court enacting laws to enforce that only the rapist (charged in conviction) of a minor child can have custody of the minor child conceived between the suspect and victim so long as the suspect has married the victim and House Bill to conceal form public record communications in the Legislature coincidingly with repealing Blue Law, the attempt of expulsion of religious minorities through enforced financial warfare controlling commerce to adversely affect religion minorities in compliant of tortfeasors by the Plaintiff to the State, similar to the times during the Pipeline Protests where the legislative body presented House Bill that would make it legal to strike and kill any pedestrian appearing to be in the road so long as you pressed on the gas of the vehicle and accelerated before impact and only after the expulsion of gays by the people of the State of Cohabitation laws that specifically were designed to prohibit any individuals from having any relationship intimately unless married while enforcing gay marriage to be illegal and therefore terminating the right for any individuals not man and woman to reside within the state under residency laws. Unlike these many crimes, such as premeditative murder to legalize vehicular manslaughter, termination of emancipation protections to be protected as a person of the United States Constitution was expressively written in the United States Constitution as a War Crime providing no immunity in any capacity following Civil War and proves beyond a reasonable doubt criminal conviction of any individual engaging in the hostilities of war against an unarmed civilian population.

17. Scott Horst lost property of his estate and motioned for the State to Order the Plaintiff custody of the plaintiff's minor children and sum amounts for child support on the basis that a non-emancipated child bride cannot provide support for children to have custody, so the emancipated Plaintiff must pay him to support the children and only he must be granted custody of the children. The State of North Dakota and the United States organized a system to remove federal process of emancipation to the Plaintiff, organized a system to remove the Plaintiff's legal right to provide care for herself nor any individual, and then granted a claim on the loss to Scott Horst, the State of North Dakota, and the United States upon restoration of the Plaintiff's civil right to be a person under the law. The State of North Dakota and the United States have continued to grant further claims loss of emancipation restoring the Plaintiff's right to be a person under the law used the removal of rights combined with grants of claims to compensate Scott Horst, the

State of North Dakota, and the United States by awarding Matthew Hagen custody of her children by extreme force and extremely illegal means and payments in sum of child support with fabricated amounts used for wages nonfactual nor allowed any good faith opportunity for review on Appeal with due process.   The Plaintiff's wages have not changed in her adult life and she one order is nearly double using the same wages regardless of statutes used for review and statutes used during proceedings . . . . .   The State of North Dakota continuously   through this duration has extorted the Plaintiff of her property and home for her freedom from false imprisonment for amounts of money value above and beyond the amounts ordered in court order and above federal limitations on garnishment of wages demanding that complying with a court order paying in full the amount due for the month and arrears is contempt of court because the State reserved the right to establish orders out of any legal proceeding demanding any sum sought to be fit for arrears with no appeal process.  The State of North Dakota is the coldest state in country state side reaching temperatures below negative fifty degrees with the threat of death within three minutes by removal of shelter or transportation.  The State of North Dakota reserves the right to threaten homicide only for court ordered child support but for any amount determined outside of order including arrears.  The State of North Dakota mailed the Plaintiff intent to suspend her license on 4/22/2019.  The Plaintiff misplaced the letter.  The letter stated to respond within ten days for any disagreement.  On 4/29/2019 the Plaintiff's license was suspended.  The State of North Dakota no only reserved the right to threaten to murder the Plaintiff as extortion for her freedom from false imprisonment without court appointed counsel against criminal civil law but to withhold any notice to so to prevent the right to respond such as the Plaintiff from access to a Court of the State or Court of the United States or to any government agency by removing her transportation and removing without due process of proper notice.  The State of North Dakota does not stop at removing the right to interstate travel.  Then they suspend the right to work and suspend any license used for employment and seize the title of your assets both preventing you from lawfully working o disposing of property to pay the ransom for your life . . . .

* * *

20. Article IV Section 2 Clause 1
    a. The Plaintiff(s) privileges and immunities have been removed either entirely or in part.   Interstate
    b. Interstate Travel; prevents a state from treating citizens of other states in a discriminatory manner and a right of interstate travel may plausibly be inferred
    c. Bismarck Public Schools and Pioneer Elementary and Mandan

7

     Public Schools and Mandan Middle School kidnapped the Plaintiff's minor children.
   d. Gale Hagerty, Donald Trump, and Damien Girodat slandered, libeled, defamed, and disparaged the Plaintiff. The Plaintiff's business product in nature is public legal assistance.

* * *

 21. Article IV, Section 2, Clause 3
   a. Fugitive Slave Clause, Slave Clause, Fugitive from labor Clause was abolished by the 13th Amendment.
 22. Article VI
   a. The Constitution demand this action proceed the process to void as illegal contracts of slavery and claims on the loss of emancipation.

(Doc. No. 1-1) (errors in original).

  No reasonable person could suppose these claims to have any merit. Moreover, the sheer breadth of her claims coupled with the sheer number of defendants gives her whole complaint an air of frivolity. Consequently, this action can dismissed on the ground that it is frivolous.

### 3. Failure to State Claims for Which Relief May be Granted

  Alternatively, this action can be dismissed for failure to state a cognizable claim for which relief may be granted. At their core, Horst's claims allege defendants committed unlawful acts by: (1) advocating positions adverse to Horst in the state court proceedings; (2) making decisions adverse to Horst in the state court proceedings; (3) enforcing a decision adverse to Horst stemming from the state court proceedings; and/or (4) failing to meet Horst's demands. Setting aside the immunity enjoyed by the many of the named defendants, which will later be discussed in greater detail, these are not sufficient bases for civil liability under any reasonable legal theory.

  In addition, Horsts lacks standing for the claims in which she seeks to enforce criminal statutes or ethics codes. See, e.g., Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another");

Parkhurst v. Tabor, 569 F.3d 861, 865–67 (8th Cir.2009) (crime victims lack standing to compel a criminal prosecution); Jones v. Clinton, 206 F.3d 811, 812 (8th Cir. 2000) (a private party lacks standing to prosecute an action for criminal contempt ); Smith v. Shaw, No. 5:09–01001, 2012 WL 1832340, at * 1 (S.D. W. Va. April 25, 2012); Herr v. Cornhusker Farms, Case No. 1-15-cv-174, 2017 WL 1149072 at *16 (D.N.D. March 27, 2017) (not allowing privatized enforcement of ethical rules).

In short, despite its length, Horst's Complaint does not state any set of facts that, if assumed to be true, would constitute a plausible claim for which relief may be granted against any of the defendants.

### 4. Judicial and Prosecutorial Immunity

Another problem plaguing Horst's complaint is that many of the defendants and not amenable to suit. Several defendants named in this action are members of the North Dakota judiciary and states' attorneys offices. It well settled that defendants such as these have absolute immunity when acting within the scope of their judicial or prosecutorial duties or when assisting in the carrying out of judicial functions. See, e.g., Mireles v. Waco, 502 U.S. 9, 11 (1991) (judicial immunity); Imbler v. Pachtman, 424 U.S. 409, 431(1976) (prosecutorial immunity); Penn v. United States, 335 F.3d 786, 789 (8th Cir. 2003) (absolute immunity extends "to other officials for acts taken pursuant to a facially valid court order"); Robinson v. Freeze, 15 F.3d 107, 109 (8th Cir. 1994) (judicial immunity extends to individuals carrying out the judiciary's functioning); see also Buckley, 509 U.S. 259, 273 ("[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."); Stump v. Sparkman, 435 U.S. 349,

356–57 (1978) (citation omitted) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'"); Grazzini-Rucki v. Knutson, 597 Fed. App'x 902, 903 (8th Cir. 2015) (per curiam) (quotation omitted) ("An act is judicial if it is a function normally performed by a judge and the parties dealt with the judge in his judicial capacity."); Buckley v. Fitzsimmons, 509 U.S. 259, 273 ("[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."); Shmueli v. City of New York, 424 F.3d 231, 237 (2d Cir. 2005) ("A prosecutor is . . . entitled to absolute immunity despite allegations of his knowing use of perjured testimony and the deliberate withholding of exculpatory information. Although such conduct would be reprehensible, it does not make the prosecutor amenable to a civil suit for damages." (internal quotes omitted))

For most, if not all, of these defendants, Horst has failed to pled facts that state a claim to which the absolute immunity of these defendants would not apply.

### 5. Lack of Subject Matter Jurisdiction

Finally, there is another even more fundamental problem with Horst's Complaint. Assuming that the defects in Horst's pleadings could be rectified by way of an amended complaint, this Court lacks subject matter jurisdiction to entertain this suit at all because of the limited authority of federal courts to revisit state court proceedings, particularly with respect to state court determinations regarding domestic relations.

### a. Rooker-Feldman Doctrine

Under the Rooker-Feldman doctrine, lower federal courts lack subject matter jurisdiction over challenges to state court judgments, a review limited to the province of the United States Supreme Court. Keene Corp. v. Cass, 908 F.2d 293, 296 (8th Cir. 1990) (noting "[f]ederal courts, with the exception of the United States Supreme Court, do not possess appellate jurisdiction over state court proceedings."). This doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, (2005). These types of suits are "out of bounds" in federal court and warrant dismissal "for want of subject-matter jurisdiction." Id. at 283-84. The doctrine not only precludes direct assailments of state court judgments, but also prohibits collateral attacks by way of federal claims inextricably intertwined with the state court judgments. Prince v. Arkansas Bd. of Examiners in Psychology, 380 F.3d 337, 341 (8th Cir. 2004). Federal claims are inextricably intertwined "with the state court judgment if they succeed only to the extent that the state court wrongly decided the issue before it." Id. (internal quotations and alterations omitted). This prevents federal courts from considering actions that would "directly nullify the final judgment of the state court." Id. (internal alterations and quotations omitted). The type of relief sought may be indicative of whether a federal claim is simply an attempt to disturb the state court judgment. Id.

### b. Domestic Relations Exception

More particular to family law matters, federal courts have developed what has come to be known as the domestic relations exception. The "domestic relations exception, first articulated in

Barber v. Barber, 62 U.S. (1 How.) 582, 584, 16 L.Ed. 226 (1859), divests the federal courts of jurisdiction over a narrow range of cases implicating domestic relations issues, such as divorce, allowance of alimony, child custody, and child support. See Wallace v. Wallace, 736 F.3d 764, 766 (8th Cir. 2013); Kahn v. Kahn, 21 F.3d 859, 861 (8th Cir. 1994); Strickland v. Cty. Council of Beaufort Cty., 230 F. Supp. 3d 949, 955 (D. Minn. 2017) ("[The domestic relations exception]" does not affect the exercise of federal jurisdiction over the enforcement of an alimony or child support decree that has been properly obtained in a state court of competent jurisdiction. Rather, the exception applies only if plaintiffs seek the granting or modification of a divorce or alimony or child support decree.") (internal citations, quotations, and modifications omitted)). This doctrine precludes federal suit involving "a remedy which is essentially domestic—where, in addressing the same conduct involved in a state domestic proceeding, the effect of a remedy in the federal suit is to modify, nullify, or predetermine the domestic ruling of the state proceeding." Wallace v. Wallace, 736 F.3d 764, 767. No matter how styled, the domestic relations exception disallows domestic claims "cloaked in the 'trappings' of another type of" a federal claim. Mandel v. Town of Orleans, 326 F.3d 267, 271 (1st Cir. 2003) (quoting Congleton v. Holy Cross Child Placement Agency, Inc., 919 F.2d 1077, 1078–79 (5th Cir.1990)).

### III.  CONCLUSION AND RECOMMENDATION

Horst's motion to proceed in forma pauperis (Doc. No. 1) is **GRANTED**. The Clerk's Office shall file her Complaint with attachments/supplemental materials. However, for the reasons expressed above, and pursuant to the initial screening allowed for under 28 U.S.C. § 1915(e)(2), I **RECOMMEND** that the above action be **DISMISSED WITHOUT PREJUDICE** for (1) failure to comply with Fed. R. Civ. P. 8, (2) frivolousness, (3) failure to state a claim upon

which relief can be granted, and (4) for want of subject matter jurisdiction.

## **NOTICE OF RIGHT TO FILE OBJECTIONS**

Pursuant to D.N.D. Civil L.R. 72.1(D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file appropriate objections may result in recommended action without further notice or opportunity to respond.

Dated this 3rd day of June, 2019.

                                            */s/ Clare R. Hochhalter*
                                            Clare R. Hochhalter, Magistrate Judge
                                            United States District Court